# EXHIBIT 19

# LOAN AGREEMENT

THIS LOAN AGREEMENT ("Agreement") dated as of **October 20, 2015** is entered into by and between **R44 Lending Group LLC, a Delaware Limited LLC** ("Borrower"), and **Southwest Finance a California LLC** ., **a California corporation, for itself and/or on behalf of the individuals and/or entities named on the "BENEFICIAL INTEREST" ADDENDUM attached to the Deed of Trust and incorporated herein by this reference, their successors and/or assigns** ("Lender").

## RECITALS

A. Borrower now owns , or will , with a portion of the proceeds hereof, acquire, the real property located in the **City of Carson** , **County of Los Angeles State of California** (the "Land"), and more particularly described in Exhibit "A" attached hereto and made a part hereof. The Land and any such improvements now or hereafter to be constructed thereon ("Improvements") are hereinafter sometimes collectively referred to as the "Property".

B. Borrower has applied to Lender for a loan to finance, or to refinance existing debt (the "Loan"). Lender has agreed to lend to Borrower a sum not to exceed **TWO MILLION DOLLARS AND NO/IOOTHS ($2,170,389)** (the "Loan").

C. As further consideration for Lender making the Loan, ("Guarantor"), has agreed to execute concurrently herewith Lender's form of unconditional Continuing Guaranty, guaranteeing timely payment of all of Borrower's obligations under the Loan Documents (as defined in Section 1.14 below).

NOW, THEREFORE, in consideration of the foregoing Recitals, and the covenants, conditions, representations and warranties contained herein, the parties hereto agree as follows:

## ARTICLE 1
## THE LOAN

1.1    Amount and Purpose. Lender hereby agrees to make the Loan to Borrower upon the terms and conditions set forth herein, and in the Note and other Loan Documents (as those terms are defined on Exhibit "C" attached hereto).

1.2    Maturity. Borrower shall repay the Loan in accordance with the provisions of the Note and this Agreement. The principal balance outstanding under the Note shall be due and payable in full without demand on November 30, 2016 (the "Maturity Date");

And, if checked X, provided, however, that Borrower may on **Two (2)** occasions request that Lender extend the Maturity Date for an additional period of **Three (3)** months, and such extension request shall be granted to Borrower upon all of the following conditions having been satisfied:

(a)    there shall exist no Event of Default (as defined in Section 7.1 hereof), and no event that, with the giving of notice or lapse of time or both, would constitute an Event of Default;

(b)    during the extended term, all terms and conditions of the Loan Documents shall continue to apply;

(c)    Borrower shall cause to be delivered to Lender at Borrower's expense any endorsements to the Title Policy reasonably requested by Lender insuring the continued priority of the Deed of Trust (as those terms are defined below), subject only to such exceptions as Lender has approved in writing;

**(d)**    Borrower shall execute any agreements or documents or amendments to the Loan Documents reasonably requested by Lender to properly document the extension; including, but not limited to (1) an acknowledgement of the amount of principal, interest and other amounts due and owing from Borrower to Lender on the Maturity Date; (2) an acknowledgement that Borrower has no claims, offsets, recoupments or any other right of action against Lender and it agents and that Lender is not in default under the terms of the Note, Deed of Trust, Loan Agreement or any other Loan Documents;

(e)    Borrower shall have delivered to SouthWest Finance LLC not less than thirty (30) days prior to the Maturity Date, as the same may have theretofore been extended, Borrower's written request for an extension;

(f)    Borrower shall have delivered to Southwest Finance LLC at least five (5) days prior to the Maturity Date, as the same may have theretofore been extended, **a check payable to Lender, or Lender's Loan Servicing Agent,** covering the amount of interest due or to become due up to 1 month prior to the requested extended Maturity Date as set out above (typically the next three interest payments); Southwest Finance the Loan Service.

(g)    Borrower shall have delivered to, and made payable to, Southwest Finance LLC , Inc., at least five (5) days prior to the Maturity Date, as the same may have theretofore been extended, an extension fee equal to **One and Three Quarter percent (1.75%),** of the then-outstanding balance of the Loan per extension request (said fee to be earned by Southwest Finance LLC,    for compensation for its work performed in arranging and documenting the extensions, and not the individuals and/or entities named on the "BENEFICIAL INTERESTS" ADDENDUM **("Investors"));**

(h)    In the event that Borrower provides its written request of an extension less than 30 days prior to the Maturity Date, the extension fee shall increase by ONE HALF percent (0.5%), for a total extension fee of **Two and a Quarter percent (2.25%),** payable to Southwest Finance LLC    (said fee to be earned by Southwest Finance LLC , Inc., for compensation for its work performed in arranging and documenting the extensions, and not the **"Investors").**

**In the event that Borrower fails to pay the Loan off in full on or before the Maturity Date,** Borrower agrees to pay Southwest Finance LLC, a fee equal to One percent (1%) of the principal balance of the Loan (said fee to be earned by Southwest Finance LLC ., for compensation for its work performed in arranging outlined above and documenting the extensions, and not the individuals and/or entities named on the "BENEFICIAL INTERESTS" ADDENDUM **("Investors")).** Borrower

acknowledges that the failure to extend or pay off fee is intended to compensate Southwest Finance for the additional expenses incurred by Southwest Finance LLC which are caused by Borrower's failure to timely extend or pay the loan in full, including but not limited to (1) providing written status reports to the Investors of Borrower's failure to pay the loan in full at maturity and advising the Investors of the available default remedies, (2) commencement of work by Southwest Finance LLC in house counsel and brokers evaluating Lender's default remedies, including but not limited to conducting an in house evaluation of the value of the property, re-underwriting the Loan, any other factors relevant and necessary to advising the Investors on the default remedies available; (3) conducting independent phone conversations and meetings with such Investors as may contact Southwest following receipt of the written status report; (4) compiling the written authorizations of the Investors to proceed with any default remedies which the Investors may have authorized, if any; (5) conducting discussions with Borrower, its agents, counsel and third parties regarding the status of the Loan; and (6) complying with the Southwest Finance LLC duties under the terms of the Note Sharing & Servicing Agreement with the Investors and applicable law with respect to informing Investors of the actions to be taken in exercise of any default remedies authorized by the Investors, if any. The parties acknowledge that Lender's actual damages for Borrower's failure to timely extend or pay off the Loan would be extremely difficult or impracticable to determine. Therefore, the parties acknowledge that the amount equal to one percent (1%) of the Loan amount, has been agreed upon, after negotiation, as the parties' reasonable estimate at the time of their entering into this agreement of Lender's reasonable damages accruing for Borrower's failure to timely extend or pay off the Loan

1.3     Interest. The advanced, unpaid principal balance of the Loan shall bear interest ("Interest") from December 1, 2015 at a rate of **Eight Percent ( 8%)** per annum ("**Interest Rate**"). Interest shall be paid monthly, on the first day of the month, in arrears. PRORATED INTEREST FROM DECEMBER 1, 2004 TO MARCH 1, 2016, SHALL BE PREPAID AT TIME OF FUNDING AND THROUGH CLOSE OF ESCROW – **NEXT INTEREST PAYMENT DUE APRIL 1, 2016, AND FINAL PAYMENT DUE NOVEMBER 30,2016 unless the Option to Extend has been exercised.**

1.4     Closing. As used herein, the term "**Closing Date**" shall mean the date of recordation of the Deed of Trust. The "**Closing Date**" shall occur on or before December 7, 2015 , **unless extended by Southwest Finance LLC ( " Termination Date " )** Lender's obligation to make the Loan, and the remainder of its obligations under this Agreement, shall terminate if, on or before the Termination Date, Borrower does not satisfy the conditions set forth in Article 2 hereof.

1.5     INTENTIONALLY OMITTED.

1.6     Interest Amount. The aggregate amount of Monthly Interest payable by Borrower prior to the date on which the Note shall mature, excluding any prorated interest from Date of Funding to the first day of the month following Date of Funding that is paid at close of escrow, is estimated to be the sum of **TWO HUNDRED FORTY THOUSAND DOLLARS AND NO/100THS ($ 173,000.00)** (the "**Interest Amount**").

1.7   Loan Fees.   Upon the date Lender initially funds the Loan, Lender shall pay to itself from the initial disbursement of the Loan a fee ("Loan Fee") equal to **seven percent** (7%) **or One Hundred Forty Thousand Dollars and No/lOOths ($140,000.00)**.   In addition, Borrower shall be responsible for all of Lender's costs, including legal fees, document preparation fees, escrow fees, title insurance fees, recording fees, and any other reasonable and customary lending costs incurred by Lender.   Borrower further agrees to pay Referral Fees for each loan as shown below.  The Interest Amount, the Loan Fee and all such other fees, expenses and costs shall be deducted from Borrower's proceeds at the Closing.  Initial fees being charged herein are as follows

| | | |
|---|---|---|
| $ 0 | = | 0% Loan Origination Fee |
| $ 2 ,000.00 | = | Estimated Escrow Fee |
| $ 3.333 .33 | = | Estimated Title Insurance Policy |
| $ 0 | = | Document Prep Fee |
| $ 0 | = | Loan Servicing Fee |
| $ 0 | = | Legal Fees |
| $ 2,893.00 | = | 24 days Prorated Interest from  12-7-15 to 12-30-15 |

1.8   **INTENTIONALLY OMITTED.**

1.9   Liquidated Damages. IF THE LOAN DOES NOT CLOSE ON OR BEFORE THE TERMINATION DATE FOR ANY REASON OTHER THAN THE DECISION OF LENDER NOT TO FUND THE LOAN, IT IS AGREED BETWEEN LENDER AND BORROWER THAT LENDER HAS OR WILL INCUR SIGNIFICANT COSTS AND EXPENSES IN CONNECTION WITH THE INITIAL PROCESSING, FINAL PROCESSING, REVIEW AND APPROVAL OF THE MATTERS RELATING TO THE LOAN, INCLUDING, WITHOUT LIMITATION, APPRAISAL FEES, ATTORNEYS' FEES, ADMINISTRATION COSTS, OPPORTUNITY COSTS, LOST LOAN FEES, AND INTEREST EXPENSE ON FUNDS RESERVED FOR THIS LOAN, AND IT IS EXTREMELY DIFFICULT AND IMPRACTICAL, IF NOT IMPOSSIBLE, TO ASCERTAIN WITH ANY DEGREE OF CERTAINTY THE AMOUNT OF DAMAGES WHICH WOULD BE SUFFERED BY LENDER IN THE EVENT OF BORROWER'S FAILURE TO CLOSE THE LOAN. ACCORDINGLY, IN THE EVENT THE LOAN DOES NOT CLOSE FOR ANY REASON OTHER THAN THE REFUSAL OF LENDER TO FUND ON THE TERMS SET FORTH HEREIN, AND SUCH FAILURE TO CLOSE OCCURS PRIOR TO THE DELIVERY OF LOAN DOCUMENTS TO BORROWER, THEN BORROWER AND LENDER HEREBY SPECIFICALLY AGREE THAT ONE PERCENT (1%) OF THE LOAN AMOUNT PLUS THE COSTS INCURRED BY SCRIPPS FOR INTEREST ON THE FUNDS DEPOSITED INTO ESCROW AT THE NOTE RATE ("INTEREST EXPENSES"), SHALL BE OWED, PAID TO AND RETAINED BY LENDER AS LIQUIDATED DAMAGES. IN THE EVENT THE LOAN DOES NOT CLOSE FOR ANY REASON OTHER THAN THE REFUSAL OF LENDER TO FUND ON THE TERMS SET FORTH HEREIN, AND SUCH FAILURE TO CLOSE OCCURS AFTER THE DELIVERY OF LOAN DOCUMENTS TO BORROWER, THEN BORROWER AND LENDER HEREBY SPECIFICALLY AGREE THAT TWO PERCENT (2%) OF THE LOAN AMOUNT PLUS INTEREST EXPENSES, SHALL BE OWED, PAID TO AND RETAINED BY LENDER AS LIQUIDATED DAMAGES THE PARTIES ACKNOWLEDGE THAT LENDER'S ACTUAL DAMAGES IN THE EVENT OF A DEFAULT BY BORROWER WOULD BE EXTREMELY

DIFFICULT OR IMPRACTICABLE TO DETERMINE. THEREFORE, THE PARTIES ACKNOWLEDGE THAT THE AMOUNT EQUAL TO ONE PERCENT (1%) OF THE LOAN AMOUNT PLUS INTEREST EXPENSES, HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES' REASONABLE ESTIMATE AT THE TIME OF THEIR ENTERING INTO THIS AGREEMENT OF LENDER'S REASONABLE DAMAGES ACCRUING FOR BORROWER'S FAILURE TO CLOSE THE LOAN PRIOR TO THE DELIVERY OF LOAN DOCUMENTS TO THE BORROWER, AND THAT THE AMOUNT EQUAL TO TWO PERCENT (2%) OF THE LOAN AMOUNT PLUS INTEREST EXPENSES, HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES' REASONABLE ESTIMATE AT THE TIME OF THEIR ENTERING INTO THIS AGREEMENT OF LENDER'S REASONABLE DAMAGES ACCRUING FOR BORROWER'S FAILURE TO CLOSE THE LOAN FOLLOWING THE DELIVERY OF LOAN DOCUMENTS TO THE BORROWER, AND SUCH LIQUIDATED DAMAGES SHALL BE LENDER'S EXCLUSIVE REMEDY AGAINST BORROWER IN THE EVENT OF BORROWER'S FAILURE TO CLOSE THE LOAN. THEREFORE, IT IS AGREED THAT IF THE LOAN DOES NOT CLOSE ON OR BEFORE THE TERMINATION DATE FOR ANY REASON OTHER THAN THE DECISION OF LENDER NOT TO FUND THE LOAN ACCORDING TO THE TERMS HEREIN LENDER SHALL DUE AND ENTITLED TO AND HAVE THE RIGHT TO SEEK AN AMOUNT EQUAL TO ONE PERCENT (1%) OR TWO PERCENT (2%), AS THE CASE MAY BE, OF THE LOAN AMOUNT PLUS INTEREST EXPENSES FROM BORROWER.

Initials: _____  Initials: _____  Initials: _____

1.10 <u>Lender's Maximum Aggregate Liability.</u> NOTWITHSTANDING ANY PROVISION TO THE CONTRARY CONTAINED IN THIS AGREEMENT OR ANY DOCUMENTS EXECUTED BY LENDER PURSUANT HERETO OR IN CONNECTION HEREWITH, BORROWER HEREBY ACKNOWLEDGES AND AGREES THAT THE MAXIMUM AGGREGATE LIABILITY OF LENDER, AND THE MAXIMUM AGGREGATE AMOUNT WHICH MAY BE AWARDED TO AND COLLECTED BY BORROWER, IN CONNECTION WITH THE LOAN AND UNDER THIS AGREEMENT AND THE LOAN DOCUMENTS (INCLUDING, WITHOUT LIMITATION, IN CONNECTION WITH THE BREACH OF ANY OBLIGATION OF LENDER OR THE FAILURE OF LENDER TO FUND THE LOAN), FOR WHICH A CLAIM IS TIMELY MADE BY BUYER SHALL NOT EXCEED ONE PERCENT (1%) OF THE LOAN AMOUNT. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING (AND NOT BE MERGED THEREIN) OR ANY EARLIER TERMINATION OF THIS AGREEMENT ..

Initials: _____  Initials: _____  Initials: _____

1.11 <u>Loan Balancing.</u> INTENTIONALLY OMITTED

1.12 <u>Borrower's Cost.</u> INTENTIONALLY OMITTED.

1.13 <u>Borrower Compensation; Lender Approvals.</u>

(a) <u>Borrower Compensation.</u> Neither Borrower nor Guarantors nor any of their respective employees, shareholders, partners, members or affiliates shall receive any compensation, salary, fees, payments or other distributions of any kind in connection with

the Project, other than those that have been expressly approved by Lender as line items in the approved Budget.

     (b)    <u>Lender Approvals.</u>  While the Loan remains outstanding, the following actions by Borrower in connection with the Project shall require the prior written consent of Lender: (i) any action proposed to be taken by Borrower which is materially inconsistent with, or any material change to, the Property, and (ii) any action proposed to be taken by Borrower which is materially inconsistent with, or any material change to, the existing entitlements to the Property or which would adversely affect the value of the Property.

     (c)    <u>Method for Obtaining Lender Approval; Certain Definitions.</u>  Any request for approval pursuant to this Section shall be submitted to Lender in writing as soon as Borrower becomes aware of the need for such approval, but in no event less than ten (10) business days prior to the proposed action for which consent is sought. Each such request shall contain Borrower's written analysis of the impact of any such action and shall contain sufficient cost proposals, accounting backup, marketing information and other information as may be reasonably necessary to support such analysis or as may be requested by Lender.

    1.14    <u>Loan Documentation and Security.</u>  Borrower shall execute and acknowledge or obtain the execution and acknowledgment, as provided, and deliver concurrently with this Agreement, the loan documents and other documents described in Exhibit "C" (collectively "Loan Documents"). Any reference to the Loan Documents shall refer to such documents as they may be amended, renewed or extended from time to time with the written approval of Lender. All Loan Documents shall be in form and substance satisfactory to Lender and shall include consents from third parties as Lender deems necessary or appropriate.

    1.15    <u>Guaranties.</u>  Concurrently herewith, Lender shall receive the following guaranty ("Guaranties") which shall constitute an additional Loan Document hereunder:

    1.16    <u>Environmental Indemnity Agreement.</u>  Concurrently herewith, Borrower and Guarantors shall execute and deliver to Lender a separate Environmental Indemnity Agreement (the "Environmental Indemnity") in form and substance satisfactory to Lender pursuant to which Borrower and Guarantors will indemnify and hold Lender harmless from and against any and all losses, damages, claims, costs and expenses incurred by Lender as a result of the existence or alleged existence of hazardous or toxic substances on, under or about the Property.

    1.17    <u>No Prepayment.</u>  INTENTIONALLY OMITTED.

    1.18    <u>Payments to Lender or For Protection of Security.</u>  Notwithstanding anything to the contrary contained herein, Lender may, in its sole and absolute discretion, but with no obligation to do so, use and disburse any undisbursed Loan funds or funds deposited into Fund Control to pay, as and when due, (a) any Loan Fee, Interest or outstanding principal balance of the Loan, debt service owing to any junior or senior lender, or any other amounts required to be

paid by Borrower hereunder, which are delinquent and which have not been paid by Borrower within five (5) days following demand for such payment by Lender; and (b) any amounts necessary to protect or enforce its security, maintain or preserve the value of the Property, or remedy the failure of Borrower to perform any of its obligations or covenants under the Loan Documents.

## ARTICLE 2
## CONDITIONS PRECEDENT TO LOAN CLOSING

Lender's obligation to make the Loan and perform its duties under this Agreement shall be subject to the full and complete satisfaction of the following conditions precedent:

2.1     <u>Loan Documents.</u>  Lender shall have received and approved fully executed copies of each of the Loan Documents described on Exhibit "C," including Assignments, Consents and Guaranties executed by third parties and the Environmental Indemnity, which documents shall have been duly authorized, executed (and, where appropriate, acknowledged), and delivered by the parties thereto, and any and all other documents as Lender may deem reasonably necessary with respect to the Loan.

2.2     <u>Entitlements.</u>  Lender shall have received and approved evidence satisfactory to Lender that Borrower has complied with all covenants, conditions, restrictions and reservations affecting the Property, that the Property is duly and validly zoned for the intended use, and that Borrower has obtained or will obtain all discretionary zoning, subdivision and environmental approvals and permits required to be obtained, and shall be in a position to obtain all other necessary approvals and permits in a timely manner.

2.3     <u>Soils.</u>  Lender shall have received and approved a soils and geotechnical report prepared by a licensed engineer acceptable to Lender certifying in a manner satisfactory to Lender the adequacy of the subsoils.  Lender shall have also received and approved a grading plan, to the extent applicable, including any plans for soil remediation or satisfaction of any other recommendations set forth in the soils and geotechnical report.

2.4     <u>Utilities.</u>  Lender shall have received and approved evidence satisfactory to Lender (such as "will-serve" letters from appropriate utilities) regarding the availability of all public utility services and facilities needed for the construction, sale, and/or use of the Property or Improvements.

2.5     <u>Flood Zone.</u>  Lender shall have received and approved evidence satisfactory to Lender that the Property is not located in an area identified as a flood zone area as defined by the U.S. Department of Housing and Urban Development pursuant to the Flood Disaster Act of 1973.

2.6     <u>Plans and Specifications.</u>  <u>INTENTIONALLY OMITTED.</u>

2.7     <u>Environmental Report.</u>  Lender shall have received and approved a current Phase I environmental assessment addressed to Lender, and if requested by Lender as a result of issues disclosed in such Phase I environmental assessment, a Phase II environmental assessment (collectively, the "Environmental Report") regarding the possible presence of any Hazardous Substances on, in or around the Property.  The Environmental Report shall be in form and

substance acceptable to Lender, prepared by a consultant acceptable to Lender, and shall show no state of affairs objectionable to Lender.

2.8     Title Insurance.  Lender shall have received an CLTA-LP9 or ALTA Title Policy (or as requested by Lender at time of closing) with full extended coverage (the "Title Policy") issued by Commonwealth Land Title (the "Title Company") satisfactory to Lender in the full amount of the Loan naming Lender as the insured party and Borrower as the owner and holder of fee simple title to the Property insuring the lien of the Deed of Trust as a **first** priority lien upon the Land or on the Property, subject to no exceptions other than exceptions approved by Lender. The Title Policy shall include all such endorsements as are satisfactory to the Lender, in its sole and absolute discretion.

2.9     Insurance.  Prior to funding, Borrower shall deliver to Lender certificates or other proof of insurance satisfactory to Lender in its sole and absolute discretion evidencing all insurance required to be carried under Section 5.14 below, with the following shown as an Additional  Insured  and/or  Loss  Payee: Southwest Finance LLC

2.10    Taxes.  All delinquent taxes, assessments or other governmental charges or liens affecting the Property, if any, shall have been paid, and all taxes, fees and other charges in connection with the execution, delivery and recording of the Loan Documents shall have been paid.

2.11    Evidence of Authority.  Lender shall have received evidence satisfactory to Lender and its counsel that Borrower and/or Guarantors, and the persons signing on behalf of such parties, have the capacity and authority to execute and deliver the Loan Documents and Environmental Indemnity on behalf of the applicable parties to such documents.

2.12    Legal Opinion.  Lender shall have received and approved a legal opinion satisfactory to Lender from Borrower's counsel confirming the matters set forth in Exhibit "D," attached hereto.

2.13    Other Matters.  Prior to funding, Borrower shall deliver to Lender such evidence as Lender may require showing :

## ARTICLE 3
## (INTENTIONALLY OMITTED)

## ARTICLE 4
## (INTENTIONALLY OMITTED)

## ARTICLE 5
## COVENANTS

In addition to any other covenants contained herein or in the Loan Documents, Borrower covenants and agrees as follows:

5.1     General.     From and after the date hereof and so long as any amount remains unpaid on the Note, or for so long as any commitment exists to extend credit hereunder, Borrower covenants and agrees that it will:

(a)     Promptly pay principal and interest and all other sums falling due under the Note as and when the same become due and payable;

(b)     Promptly deposit with Lender all sums required under the terms of this Agreement;

(c)     Preserve and keep in full force and effect in the same state of formation or organization Borrower's existence as a general or limited partnership or limited liability company or corporation, as the case may be, and retain title to the Property subject only to exceptions permitted by Lender;

(d)     Pay before any penalty attaches all real property taxes and all special taxes, special assessments, water charges, drainage and sewer charges and all other charges of any kind whatsoever, ordinary or extraordinary which may be levied, assessed, imposed or charged on or against the Property or any of Borrower's properties, and will, upon written request, exhibit to Lender official receipts evidencing such payments. Notwithstanding the foregoing, Borrower shall have the right to contest the validity, applicability or amount of any such taxes, charges or assessments as provided in, and subject to the requirements and limitations set forth in the Deed of Trust;

(e)     Obtain and maintain the insurance required herein;

(f)     Pay all costs, expenses and fees incurred by Lender arising out of or incurred in connection with any of the transactions contemplated hereby and, without limiting the generality of the foregoing, pay all taxes, filing and recording expenses (including stamp taxes, if any), all title insurance charges, all escrow fees and expenses, all appraisal fees and expenses, the fees and commissions lawfully due to brokers and consultants in connection with the transactions contemplated hereby, the fees and expenses of any architect, engineer or surveyor, and attorneys' fees and court costs actually incurred by Lender in connection with this transaction. If Borrower shall fail to pay any of the foregoing, Lender may pay the same, and amounts so expended shall, at Lender's option, constitute advances of the Loan evidenced by the Note or advances made pursuant to the Deed of Trust (which advances shall in any event be secured by the

Deed of Trust and other Loan Documents), but any such payment by Lender shall not be deemed to cure any default hereunder; and

(g)    Employ or cause to be retained officers, employees and other personnel sufficient, in the reasonable business judgment of Lender, to oversee and carry out the obligations of Borrower under this Agreement, including, without limitation, project managers, sales and marketing supervisors, and finance, accounting and bookkeeping personnel sufficient to insure the timely and efficient construction, completion and sale of the Lots and/or Improvements.

5.2    Changes to Plans and Specifications. **(INTENTIONALLY OMITTED)**

5.3    Construction Start and Completion. **(INTENTIONALLY OMITTED)**

5.4    Completion of Construction. **(INTENTIONALLY OMITTED)**

5.5    Leases and Sales Contracts. Without Lender's prior written consent, Borrower shall not execute any lease or sales contract with respect to any portion of the Property.

5.6    Personal Property Incorporation. No materials, equipment or fixtures shall be purchased or installed on the Property under any security agreement, conditional sales contract or other agreement wherein the seller reserves a security interest in, or the right to remove or to repossess, such items or to consider them personal property after their incorporation into the work of construction, without Lender's written consent. Borrower represents and warrants all assets on the Property are owned by or leased by Borrower, and Borrower cannot and will not allow any personal property to be stored on the Property which is not either owned or leased by Borrower.

5.7    Compliance with Laws. All work performed in connection with the Property shall comply with all applicable laws, ordinances, rules and regulations of federal, state, county or municipal governments or agencies now in force or which may be enacted hereafter, and with all directions, rules and regulations of the Department of Real Estate of the state in which the Property is located, fire department, health department, building department or other departments of every governmental agency now having or hereafter acquiring jurisdiction over the Property ("Applicable Laws").

5.8    Protection Against Liens. Borrower agrees to pay and discharge all claims for labor performed and material and services furnished in connection with the Property, and to take all other steps necessary to forestall the assertion of claims or liens either against the Property, or any part thereof or right or interest appurtenant thereto, or of claims against Lender or the Loan funds. Nothing herein contained shall require Borrower to pay any claims for labor, materials or services which either party, in good faith disputes and which such party, at its own expense, is currently and diligently contesting; provided, however, that not later than ten (10) days after the notice of the filing of any claim or lien against the Property which is disputed or contested by Borrower, Borrower shall either (a) record a surety bond sufficient to release said claim or lien and promptly give notice of such recordation to the lien holder or claimant, or (b) make other arrangements therefor satisfactory to Lender; and provided further, that Borrower's refusal to pay

such claims shall not cause a default to exist under any other loan on the property, either junior or senior to the Loan.

5.9     Construction Inspections.  **(INTENTIONALLY OMITTED)**

5.10    Financial and Other Records.

    (a)     Financial Statements for Borrower and Guarantors.  Borrower and Guarantors shall furnish to Lender within sixty (60) days after the end of each calendar year, annual financial statements for Borrower, and each of the Guarantors, audited by an accounting firm reasonably acceptable to Lender and prepared in accordance with generally accepted accounting principles, certified by Borrower and/or Guarantors, as applicable, to be true and correct as of the date made and in form and content acceptable to Lender

    (b)     Other Accounting Data.  Borrower shall also make available to Lender at any time upon reasonable prior notice sufficient accounting backup and detail to verify all aspects of any reports and financial statements which have been submitted to Lender.

    (c)     Right to Audit.  **(INTENTIONALLY OMITTED).**

5.11    Notify Lender of Litigation or Compliance.  Borrower shall promptly notify Lender in writing of all litigation or possible litigation affecting Borrower or Guarantor or the Property or any part thereof, and of all complaints or charges made by any governmental authority or insurance company relating to the Property or Borrower which may delay, or require changes in, the construction of the Improvements or Lots to impair the security of Lender.

5.13    Indemnify Lender.

    (a)     Indemnity.  Borrower shall indemnify, defend, protect and hold Lender, Lender's partners, advisors and affiliates, Lender's successors, assigns and participants, and its and their officers, directors, agents and employees (collectively, the "Indemnitees") harmless from and against any and all claims, demands, damages, losses, liabilities, obligations, penalties, fines, actions, causes of action, judgments, costs and expenses (including, without limitation, attorneys' and experts' fees and costs) of any kind or of any nature whatsoever (collectively, "Losses") arising out of or in any way connected with the Property and/or arising out of Borrower's breach of the provisions of this Agreement or any of the other Loan Documents, provided, however, that nothing in this Section shall be construed to obligate Borrower to indemnify, defend and hold harmless any Indemnitee from and against Losses to the extent such Losses are caused by such Indemnitee's own willful misconduct or gross negligence, or the exercise by Lender of any rights or remedies granted to it under this Agreement or the other Loan Documents.

(b)    Defense of Claims.  If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning the Loan, the Loan Documents, any other loan on the Property, the Property, or any part thereof, or any interest therein, or the construction, maintenance, marketing operation or occupancy or use thereof, then Borrower shall indemnify, defend and hold such Indemnitee harmless from and against all Losses by reason of said litigation or claims, including reasonable attorneys' fees (together with reasonable appellate counsel fees, if any) and expenses incurred by such Indemnitee in any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment.  If Lender commences an action against Borrower to enforce any of the terms hereof or to prosecute any breach by Borrower of any of the terms hereof or to recover any sum secured hereby, Borrower shall pay to Lender its reasonable attorneys' fees (together with reasonable appellate counsel, fees, if any) and expenses.  The right to such attorneys' fees (together with reasonable appellate counsel fees, if any) and expenses shall be deemed to have accrued on the commencement of such action, and shall be enforceable whether or not such action is prosecuted to judgment.  If Borrower breaches any term of this Agreement or the other Loan Documents, Lender may engage the services of an attorney or attorneys to protect its rights hereunder, and in the event of such engagement following such breach, Borrower shall pay Lender reasonable attorneys' fees (together with reasonable appellate counsel fees, if any) and expenses incurred by Lender, whether or not an action is actually commenced against Borrower by reason of such breach.  All references to "attorneys" in this Subsection and elsewhere in this Agreement shall include without limitation any attorney or law firm engaged by Lender and Lender's in-house counsel, and all references to "fees and expenses" in this Subsection and elsewhere in this Agreement shall include without limitation any fees of such attorney or law firm and any costs or expenses of Lender's in-house counsel (billed at $295/hr. plus actual costs).

(c)    Lender Not Responsible.  Borrower shall be solely responsible for all aspects of construction of the Improvements, including, without limitation, the sufficiency of the Approved Budget, the quality and suitability of the Plans and Specifications and their compliance with all governmental requirements, the supervision of the work of construction, the qualifications, financial condition and performance of all architects, engineers, contractors, subcontractors, material suppliers, consultants and property managers and the accuracy of all applications for payment and the proper application of all disbursements.  Lender shall have no obligation to supervise, inspect or inform Borrower or any third party of any aspect of the construction of the Improvements or any other matter referred to above.  The parties acknowledge and agree that the release and indemnity set forth in this Section are in consideration of Lender's agreement to fund the Loan, and that Lender shall have no responsibility or liability whatsoever with respect to the construction and sale of the Lots or Improvements.

(d)    Survival.  The provisions of this Section shall survive delivery and performance of this Agreement, the Note and the other Loan Documents and the repayment of the Loan.

5.14    Insurance.  Borrower shall be required to maintain and deposit, or cause to be maintained and deposited, with Lender, certificates or other proof satisfactoiy to Lender evidencing (or, if requested by Lender, original policies) of insurance issued by insurance

companies acceptable to Lender and written in form and content acceptable to Lender providing the insurance coverages for the Project which are of types and in amounts as are consistent with those carried by prudent institutional owners of similar property in the county in which the Property is located, and which insurance coverages shall, at a minimum, include the coverages and amounts and satisfy the requirements set forth on Exhibit "F" attached hereto. Lender reserves the right to alter or amend the coverages, amounts and requirements set forth on Exhibit "F." Notwithstanding the foregoing, if Borrower carries liability coverage in excess of the level shown on Exhibit "F", then such higher level shall be deemed to be the liability coverage limit required by this Section.

Borrower shall deliver to Lender evidence that said insurance policies have been paid current as of the date hereof and certificates or other proof satisfactory to Lender evidencing such insurance policies and original certificates of insurance signed by an authorized agent evidencing such insurance satisfactory to Lender. Borrower shall renew all such insurance and deliver to Lender certificates evidencing such renewals at least thirty (30) days before any such insurance shall expire. Without limiting the required endorsements to insurance policies, Borrower further agrees that all such policies shall provide that proceeds thereunder shall be payable to Lender, its successors and assigns, pursuant and subject to a mortgagee clause (without contribution) of standard form attached to, or otherwise made a part of, the applicable policy and that Lender, its successors and assigns, shall be named as an additional insured under all liability insurance policies. Borrower further agrees that all such insurance policies: (i) shall provide for at least thirty (30) days' prior written notice to Lender prior to any cancellation or termination thereof and prior to any modification thereof which affects the interest of Lender; (ii) shall contain an endorsement or agreement by the insurer that any loss shall be payable to Lender in accordance with the terms of such policy notwithstanding any act or negligence of Borrower which might otherwise result in forfeiture of such insurance; and (iii) shall be for terms of at least one (1) year. The delivery to Lender of the insurance policies or the certificates of insurance as provided above shall constitute an assignment of all proceeds payable under such insurance policies by Borrower to Lender as further security for the indebtedness secured hereby. In the event Borrower fails to provide, maintain, keep in force or deliver and furnish to Lender the policies of insurance required hereunder or evidence of their renewal as required herein, Lender may, but shall not be obligated to, procure such insurance; and Borrower shall pay all amounts advanced by Lender, together with interest thereon at the Default Rate (as defined in the Note) from and after the date advanced by Lender until actually repaid by Borrower, promptly upon demand by Lender. Any amounts so advanced by Lender, together with interest thereon, shall be secured by the Loan Documents securing all or any part of the indebtedness evidenced by the Note. Lender shall not be responsible for nor incur any liability for the insolvency of the insurer or other failure of the insurer to perform, even though Lender has caused the insurance to be placed with the insurer after failure of Borrower to furnish such insurance.

5.16    Environmental Covenants.

(a)     Borrower shall, at its expense, comply with all applicable laws, regulations, codes and ordinances relating to any Hazardous Substances or to any Environmental Activities (as such terms are defined herein below), including, without limitation, obtaining and filing all applicable notices, permits, licenses and similar authorizations (collectively, "Environmental Laws").

(b)     Borrower shall not use or permit to be used any Hazardous Substances on the Property in violation of Environmental Laws.

(c)     Borrower agrees to submit from time to time, a report, satisfactory to Lender, certifying that the Property is not currently being used nor has the Property been used in the past for any Environmental Activities except as has been previously disclosed to Lender in writing and approved by Lender.  Lender reserves the right to retain, at Borrower's expense, an independent professional consultant to review any report prepared by Borrower and/or to conduct its own investigation of the Property for Hazardous Substances.  Borrower hereby grants to Lender, its agents, employees, consultants and contractors the right to enter upon the Property and to perform such tests to conduct such a review and/or investigation.

(d)     Upon the discovery by Borrower of any event or situation which would render any of the representations or warranties contained herein inaccurate in any respect if made at the time of such discovery, Borrower shall promptly notify Lender of such event or situation and, within thirty (30) days after such discovery, submit to Lender a preliminary written environmental plan setting forth a general description of such event or situation and the action that Borrower proposes to take with respect thereto.  Within sixty (60) days after such discovery, Borrower shall submit to Lender a final written environmental report, setting forth a detailed description of such event or situation and the action that Borrower proposes to take with respect thereto, including, without limitation, any proposed corrective work, the estimated cost and time of completion, and such additional data, instruments, documents, agreements or other materials or information as Lender may reasonably request.  The plan shall be subject to Lender's written approval, which approval may be granted or withheld in Lender's sole but reasonable discretion. If Lender disapproves said plan, such disapproval shall, at Lender's option and upon notice to Borrower, constitute an "Event of Default" on behalf of Borrower hereunder.  The rights of Lender with respect to the approval or disapproval of the plan set forth herein and the actions of Lender pursuant to such rights are not intended to, and shall not, in and of themselves, confer on Lender a right to manage, operate or control the Property on a continuing basis following the discovery of the event(s) or occurrence(s) described in this Section 5.16(d).

The term "Environmental Laws" shall also mean any present and future federal, state and local laws, statutes, ordinances, rules, regulations and the like, as well as common law, relating to protection of human health or the environment, relating to Hazardous Substances, relating to liability for or costs of the other actual or threatened danger to human health or the environment. "Environmental Laws" includes, but is not limited to, the following statutes, as amended, any successor thereto, and any regulations and the like addressing similar issues: the Comprehensive Environmental Response, Compensation and Liability Act; the Emergency Planning and Community Right-to-

Know Act; the Hazardous Substances Transportation Act; the Resource Conversation and Recovery Act (including, without limitation, Subtitle I relating to underground storage tanks); the Solid Waste Disposal Act; the Occupational Safety and Health Act; the Federal Water Pollution Control Act; the Federal Insecticide, Fungicide and Rodenticide Act; the Endangered Species Act; the National Environmental Policy Act; the River and Harbors Appropriation Act and the Residential Lead-Based Paint Hazard Reduction Act; and the Carpenter-Presley-Tanner Hazardous Substance Account Act and California Health and Safety Code. "Environmental Laws" also includes, but is not limited to, any present and future federal, state and local laws, statutes, ordinances, rules, regulations and the like, as well as common law, conditioning transfer of property upon a negative declaration or other approval of a governmental authority of the environmental condition of the property; requiring notification or disclosure of Release of Hazardous Substances or other environmental condition of the Property to any governmental authority or other Person, whether or not in connection with transfer of title to or interest in property; imposing conditions or requirements in connection with permits or other authorization for lawful activity; relating to nuisance, trespass or other causes of action related to the Property; and relating to wrongful death, personal injury, or property or other damage in connection with any physical condition or use of the Property.

The term "Hazardous Substances" as used in this Agreement and the other Loan Documents shall include, but is not limited to, any and all substances (whether solid, liquid or gas) defined, listed or otherwise classified as pollutants, hazardous wastes, hazardous substances, hazardous materials, extremely hazardous wastes, or words of similar meaning or regulatory effect under any present or future Environmental Laws or that may have a negative impact on human health or the environment, including, without limitation, petroleum and petroleum products, asbestos and asbestos-containing materials, polychlorinated biphenyls, lead, materials containing lead-based paint, radon, radioactive materials, flammables and explosive, any hazardous or toxic materials, pollutants, effluents, contaminants, radioactive materials, flammable explosives, chemicals known to cause cancer or reproductive toxicity, emissions or wastes and any other chemical, material or substance, the handling, storage, release, transportation, or disposal of which is or becomes prohibited, limited or regulated by any federal, state, county, regional or local authority or which, even if not so regulated, is or becomes known to pose a hazard to the health and safety of the occupants of the Property including, without limitation, (i) asbestos, (ii) petroleum and petroleum by-products, (iii) urea formaldehyde foam insulation, (iv) polychiorinated biphenyls, (v) all substances now or hereafter designated as "hazardous substances," "hazardous materials" or "toxic substances" pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986, the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq., the Clean Air Act, 42 U.S.C. § 7401 et seq., the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., or the Resource, Conservation and Recovery Act, 42 U.S.C. § 6901 et seq.; (vi) all substances now or hereafter designated as "hazardous wastes" in Section 25117 of the California Health & Safety Code or as "hazardous substances" in Section 25316 of the California Health & Safety Code; (vii) all substances now or hereafter designated by the Governor of the State of California pursuant to the Safe Drinking Water and Toxic Enforcement Act of 1986 as being known to cause cancer or reproductive

toxicity; or (viii) all substances now or hereafter designated as "hazardous substances," "hazardous materials" or "toxic substances" under any other federal, state or local laws or in any regulations adopted and publications promulgated pursuant to said laws.

"Environmental Activities," as used in this Agreement shall mean the use, generation, transportation, treatment, storage or disposal of any Hazardous Substances at any time located on or present on, under or about the Property.

5.17    Environmental Indemnity.   Except for liabilities, expenses and damages to which the provisions of the Environmental Indemnity shall apply, to the fullest extent permitted by law, Borrower hereby agrees, at its sole cost and expense, to indemnify, protect, hold harmless and defend (with counsel of Lender's choice), the Indemnitees from and against all Losses which may at any time be imposed upon, incurred or suffered by, or asserted or awarded against, any Indemnitee directly or indirectly relating to or arising from any of the following (collectively, "Environmental Matters"):

(a)    Any past, present or future presence of any Hazardous Substances on, in, under or affecting all or any portion of the Property or on, in, under or affecting all or any portion of any property adjacent or proximate to the Property if such Hazardous Substances originated on or from the Property;

(b)    Any past, present or future storage, holding, handling, release, threatened release, discharge, generation, leak, abatement, removal or transportation of any Hazardous Substances on, in, under or from the Property or any portion thereof;

(c)    The failure of Borrower to comply with any and all laws, rules, regulations, judgments, orders, permits, licenses, agreements, covenants, restrictions, requirements or the like now or hereafter relating to or governing in any way the environmental condition of the Property or the presence of Hazardous Substances on, in, under or affecting all or any portion of the Property including, without limitation, all Environmental Laws;

(d)    The failure of Borrower to properly complete, obtain, submit and/or file any and all notices, permits, licenses, authorizations, covenants and the similar matters relative to any of the Environmental Matters described herein in connection with the Property or the ownership, use, operation or enjoyment thereof;

(e)    The extraction, removal, containment, transportation or disposal of any and all Hazardous Substances from any portion of the Property or any other property adjacent or proximate to the Property if such Hazardous Substances originated on or from the Property;

(f)    Any past, present or future presence, permitting, operation, closure, abandonment or removal from the Property of any storage tank which at any time contains or contained any Hazardous Substances located on, in or under the Property or any portion thereof;

(g)    The implementation and enforcement of any monitoring, notification or other precautionary measures which may at any time become necessary to protect against

the release or discharge of Hazardous Substances on, in, under or affecting the Property or into the air, any body of water, any other public domain or any property adjacent or proximate to the Property;

(h)     Any failure of any Hazardous Substances generated or moved from the Property to be removed, contained, transported and disposed of in compliance with all applicable Environmental Laws; or

(i)     Any investigation, inquiry, order, hearing, action or other proceeding by or before any governmental agency in connection with any Hazardous Substances or violations of any Environmental Law occurring or allegedly occurring at any time.

Notwithstanding anything to the contrary in this Agreement or any of the other Loan Documents, Borrower shall not be obligated to indemnify, defend or hold harmless any Indemnitee from Losses relating to or arising from Environmental Matters to the extent Losses incurred by such Indemnitee have been finally determined to have been caused by the gross negligence or willful misconduct of such Indemnitee or in the event such Indemnitee has taken possession or control of the Project, caused by the negligence of such Indemnitee. The provisions of this Section 5.17 shall survive delivery and performance of this Agreement, the Note and the other Loan Documents and the repayment of the Loan.

5.18     _Further Assurances._ Borrower, shall at any time and from time to time, upon request of Lender, take or cause to be taken any action and execute, acknowledge, deliver and/or record any further documents, opinions, mortgages, security agreements, financing statements or other instruments or obtain such additional insurance as Lender in its discretion deems necessary or appropriate to carry out the purposes of this Agreement and to preserve, protect and perfect the security intended to be created and preserved in the Property. Borrower hereby authorizes Lender to file or record any UCC-1 financing statement or fixture filings in connection with the Loan without the necessity of Borrower's signature thereon.

5.19     Additional Borrower Covenants. During the term of the Loan, Borrower hereby covenants and agrees as follows:

(a)     Not to change Borrower's state of organization or formation without Lender's prior written consent;

(b)     To provide Lender with thirty (30) days prior written notice of any change in Borrower's or Guarantors' address or principal place of business. Such notice shall contain the following language: "NOTE: THIS CHANGE OF ADDRESS MAY AFFECT LENDER'S UCC FINANCING STATEMENTS."

(c)     To provide Lender assurance that the environmental remediation work has been completed within 60 days of Closing;

(d)     To provide Lender assurance that the interior cleaning of the buildings has occurred and been completed within 60 days of Closing, bringing the buildings to a commercially reasonable standard of cleanliness;

(e)      To provide Lender assurance that the Seller's personal property stored at the Property after closing has been completely removed from the Property within 60 days of Closing;

5.20   Right of First Refusal For Additional Financing. INTENTIONALLY OMITTED

## ARTICLE 6
## BORROWER'S REPRESENTATIONS AND WARRANTIES

In order to induce Lender to make the Loan and with knowledge that Lender is acting in reliance thereon, Borrower represents and warrants as follows, which representations and warranties shall be true and correct as of the execution hereof and the Closing Date and shall survive the execution and delivery of this Agreement, the Note, the other Loan Documents, and the Environmental Indemnity:

6.1   Organization of Borrower; Authority to Enter Into Agreements.   Borrower is a Nevada corporation, duly formed and validly existing under the laws of the State of Nevada, and have qualified to do business in the State of California.  Borrower has the right and power to purchase, occupy and develop the Property, and Borrower has full power and authority to enter into this Agreement, the other Loan Documents and the Environmental Indemnity, and to borrow money as contemplated herein and to execute and carry out the provisions of the Loan Documents and the Environmental Indemnity.  The execution, delivery and performance of this Agreement, the other Loan Documents and the Environmental Indemnity have been duly authorized by all necessary corporate, partnership and/or limited liability company action of the general partners, shareholder and members of Borrower and Guarantors, as applicable, and no other action of Borrower or Guarantors is required for the execution, delivery and performance of this Agreement, the Loan Documents or the Environmental Indemnity.  This Agreement, the Note, all other Loan Documents and the Environmental Indemnity constitute, or, if not yet executed or delivered, will when executed and delivered constitute, valid and binding obligations of Borrower and Guarantors, each enforceable in accordance with its terms.

6.2   Financial Statements; Other Information.   All financial statements and all financial data, reports, certificates, affidavits and other data heretofore delivered to Lender in connection with the Loan or the application therefor by or on behalf of Borrower and Guarantors are true and correct in all respects.  All such financial statements and data have been prepared in accordance with generally accepted accounting principles consistently applied (except as otherwise expressly described therein), fairly represent the respective financial conditions of the parties who are the subjects thereof as of the dates thereof and for the periods covered thereby, and no material adverse change has occurred in the financial conditions presented therein since the respective dates thereof.  All other information provided to Lender by Borrower or its agents regarding the Property, including, without limitation, budgets, schedules, rent rolls, income statements, estoppels, Plans and Specifications, and appraisals, are true and correct in all respects and fairly represent the financial and other conditions therein as of the dates thereof and for the periods covered thereby.

6.3   No Litigation.

(a)    Property.  There are no actions, suits or proceedings pending, or to the knowledge of Borrower, threatened against or affecting the Property.

(b)    Borrower.  There are no actions, suits or proceedings pending, or to the knowledge of Borrower, threatened against or affecting Borrower or any Guarantor in any court at law or in equity, or before or by any governmental or municipal authority which might adversely affect the ability of Borrower or any Guarantor to perform its obligations hereunder, under any of the Loan Documents or under the Environmental Indemnity to which Borrower or any Guarantor is a party, or which might adversely affect the priority of the lien of the Deed of Trust on the Property, or the value of the Property or the occupancy or sale thereof.

6.4    Applicable Laws.  Borrower has complied, and shall continue to comply, with all Applicable Laws and all covenants, conditions, restrictions and reservations affecting the Property.  All permits, consents, approvals or authorizations by, or registrations, declarations, withholding of objections or filings with, any governmental body necessary in connection with the valid execution, delivery and performance of the Loan Documents and the Environmental Indemnity, and any and all other documents executed in connection with any of the foregoing, or presently necessary for the Property, have been obtained, are valid, adequate and in full force and effect or will be obtained in the ordinary course.  The Property and the use and occupancy thereof will in all respects conform to and comply with all covenants, conditions, restrictions and reservations affecting the Property and with all Applicable Laws, including, without limitation, zoning, environmental protection, use and building codes, laws, regulations and ordinances.

6.5    Access to the Property.  All roads, streets, traffic turn lanes and accessways necessary for the full utilization of the Property for its intended purposes have either been completed or the necessary rights of way therefor have either been acquired by the appropriate governmental authority or have been dedicated to public use and all conditions to the acceptance thereof by said governmental authority have been satisfied, and all necessary steps have been taken by Borrower and said governmental authority to assure the complete construction and installation thereof by the time needed for construction and/or sale of the Lots.

6.6    Utilities.  All utility services and facilities necessary for the use and operation of the Property for its intended purpose are either available at the boundaries of the Property, or, if not, all necessary steps have been taken by Borrower and the local authority or public utility company which provides such services to assure the complete installation and availability thereof when needed for construction of Improvements.

6.7    Plans and Specifications.  (INTENTIONALLY OMITTED).

6.8    Business Plan.  (INTENTIONALLY OMITTED).

6.9    Compliance with Documents.  As of the date hereof and for so long as the Loan Documents and the Environmental Indemnity remain in effect, Borrower is and will remain in full compliance with all of the terms and conditions of the Loan Documents and the Environmental Indemnity, respectively, and no event of default has or shall have occurred and shall have occurred and be continuing which, with the lapse of time or the giving of notice, or both, would constitute such an event of default under the foregoing.

6.10 <u>Marketable Title.</u> Borrower has or, upon acquisition of the Property will have, good and marketable title to the Property, subject only to the exceptions, if any, specifically consented to by Lender and set forth in the Title Policy.

6.11 <u>Taxes.</u> Borrower and Guarantors have filed all federal, state, county and municipal tax returns required to have been filed by Borrower and Guarantors, and have paid all taxes which have become due pursuant to such returns or to any notice of assessment received by Borrower or Guarantors, and Borrower has no knowledge of any basis for additional assessment with respect to such taxes.

6.12 <u>Compliance with Agreements.</u> The execution, delivery and performance of this Agreement, the other Loan Documents and the Environmental Indemnity have not created, and will not constitute, a breach or default under any other agreements, law or court order under which Borrower, any of its general partners, Builder (if any) or any Guarantor is a party or may be bound or affected or which may affect the Property or the construction, use, occupancy or operation of the Property or any part thereof.

6.13 <u>Borrower.</u> **(INTENTIONALLY OMITTED)..**

6.14 <u>Environmental Representations and Warranties.</u> Except as previously disclosed to Lender in the Environmental Report, no Environmental Activities have occurred with respect to the Property. The Property is in compliance with all Environmental Laws. Borrower has not received any written notice of claims or actions pending or threatened against Borrower, any previous owner or user of the Property (and relating to Borrower's and/or such previous owner's or user's ownership of the Property), or the Property by any governmental entity or agency or any other person or entity relating to Hazardous Substances or pursuant to Environmental Laws.

6.15 <u>Incorporation of Representations and Warranties.</u> The request by the Borrower for any advance or disbursement of Loan proceeds under this Agreement shall constitute a certification by the Borrower that the aforesaid representations and warranties are true and correct as of the date of such request.

6.16 <u>Survival of Representations and Warranties.</u> All of the representations and warranties contained in this Article shall be true and correct through and until the Closing Date, and shall continue to be true and correct at all times during the term of the Loan and shall survive the satisfaction or payoff of the Loan.

6.17 <u>Continuing Accuracy.</u> During the entire period of the term of the Loan, Borrower shall promptly notify Lender of any events or circumstances which would render any of said representations and warranties untrue or misleading.

6.18 <u>Brokers.</u> Borrower hereby represents and warrants to Lender that it knows of no broker's and/or finder's fee due in connection with or in respect to the transaction described in this Agreement and that it has not used the services of a broker or finder in connection with this transaction. Borrower agrees to hold Lender and/or Scripps harmless and indemnify Lender and/or Scripps from and against any and all damages, costs or expenses (including, but not limited to, reasonable attorneys' fees and disbursements) suffered by Lender and/or Scripps as a result of any claims by any party claiming to have represented Borrower as broker in connection with the Loan.

6.19   Personal Property.  All assets and personal property on the Property are owned by or leased by Borrower, and Borrower cannot and will not allow any property to be stored on the Property which is not either owned or leased by Borrower.

6.20   No Reliance on Lender.

i.   Borrower has not relied, nor will not rely on, Lender as to the condition, value, fitness for any particular use, or in any other manner which is or was material to Borrower in acquiring or owning the property.   Borrower's decision to purchase and develop the Property is based solely upon Borrower's own independent evaluation of information deemed relevant to Borrower. Borrower has had ample opportunity to collect and assess such information; and Borrower has not relied upon any written or oral promises, representations or inducements which have been made by Lender or Lender's agents in connection with the Loan; and

ii.   There are no other promises, representations or inducements by Lender or Lender's agents in connection with the Loan, except as set forth herein and in the other Loan Documents; and

iii.   In acquiring the Property, Borrower has assumed all risk with respect to the compliance or non-compliance of the Property with, the effect of, and any liability as a consequence at any "Environmental Laws" (as such term is defined herein), including without limitation any liability or losses that exists or that may arise with respect to the Property under Environmental Laws relating to "Hazardous Materials"

6.21   Advice of Counsel. Borrower hereby agrees, represents and warrants that Borrower has had advice of counsel of its own choosing in negotiations relating to this Loan Agreement and the Loan Documents, in consummating the transactions contemplated by the Loan Agreement and the Loan Documents, and in delivering the Loan Agreement and the Loan Documents.  Borrower further acknowledges that it has read the provisions of this Loan Agreement and the Loan Documents, that borrower has had the legal effect of the Loan Agreement and the Loan Documents fully explained by such counsel, and that borrower is fully aware of the contents of the Loan Agreement and the Loan Documents and of their respective legal effects.

## ARTICLE 7
## DEFAULT AND REMEDIES

7.1   Events of Default.  The occurrence of any of the following events shall constitute an "Event of Default" hereunder.

(a)   Borrower fails to pay: (i) any installment of interest within ten (10) days after the due date thereof; (ii) principal on or before the Maturity Date; (iii) within five (5) days following written demand therefor, any taxes, assessments, insurance premiums or any lien or charge upon the Property; or (iv) within five (5) days following written

demand therefor, any other charge or sum when due under the terms of this Note, the Deed of Trust or any of the Loan Documents;

(b)  Any breach by Borrower of any of the nonmonetary covenants and conditions of this Agreement or of the other Loan Documents, which breach is not cured to Lender's satisfaction on or before the expiration of any applicable cure period set forth herein or in the Note or other Loan Documents, or if none is so specified, within ten (10) days following Lender's providing of written notice pursuant to Section 8.3 herein; provided, however, that if such failure was not intentionally caused by Borrower, cannot be remedied by the payment of a sum of money, and is capable of being remedied but not capable of being remedied within ten (10) days, then Borrower shall have an additional period of time within which to remedy such failure, in any event not to exceed forty (40) days from notice.

(c)  Any representation, warranty or disclosure made to Lender by Borrower proves to be materially false or misleading.

(d)  Any breach by Borrower of the terms and conditions of any permitted financing senior or junior to Lender.

(e)  The recording of any claim or lien against the Property or any part thereof; provided, however, that no default shall exist hereunder as long as Borrower has fully complied with the provisions of Section 5.8 above regarding the contesting of liens.

(f)  (INTENTIONALLY OMITTED)..

(g)  Any event, act or omission occurs which, with the passage of time or the giving of notice, or both, would constitute a default under any other financing on the Property, either junior or senior to the Loan.

(h)  (INTENTIONALLY OMITTED).

(i)  A bonded stop notice is served on Lender and is not released or an acceptable counterbond provided to Lender within ten (10) business days of Borrower's receipt of written notice from Lender that such bonded stop notice has been served on Lender.

(j)  (INTENTIONALLY OMITTED).

(k)  Borrower sells, transfers, hypothecates, encumbers or assigns its interest in the Property, or any portion thereof, whether voluntarily or involuntarily, or by operation law.

(l)  Without Lender's prior written approval, (i) there shall have occurred any transfer, sale, encumbrance or assignment of any ownership interest in Borrower or of any controlling interest in Borrower or any Guarantor. As used herein, "controlling interest" shall mean ownership of more than fifty percent (50%) of the voting and economic interest in an entity.

(m)    The filing of a petition by Borrower for relief under the federal Bankruptcy Code, or under any other present or future state or federal law regarding bankruptcy, reorganization or other debtor-relief law; (ii) the filing of any pleading or an answer by Borrower in any voluntary proceeding under the Bankruptcy Code or other debtor-relief law which admits the jurisdiction of the court or the petition's material allegations regarding Borrower's insolvency; (iii) a general assignment by Borrower for the benefit of creditors; (iv) Borrower applying for, or the appointment of, a receiver, trustee, custodian or liquidator of Borrower or any of its property; (v) the failure of Borrower to effect a full dismissal of any involuntary petition under the Bankruptcy Code or under any other debtor-relief law that is filed against Borrower or in any way restrains Borrower or Lender regarding the Loan, or the Property, prior to the earlier of the entry of any court order granting relief sought in such voluntary petition, or thirty (30) days after the date of filing of such involuntary petition; or (vi) the occurrence of any of the events specified in the preceding clauses (i) to (v) as to any person other than Borrower who is obligated to Lender under the Loan Documents, including, without limitation, any Guarantor.

(n)    The failure of Borrower and Guarantors to each meet the net worth requirements set forth herein.

(o)    Any breach by any Guarantor of any of its obligations under the Guaranties or the Environmental Indemnity, including, without limitation, any net worth, liquidity or other financial covenants.

(p)    Lender shall receive at any time following the Closing a report issued by the California Secretary of State indicating that any of Lender's security interest is not prior to all other security interests; and

7.2    Remedies.  Upon the occurrence of an Event of Default, Lender may, in addition to any other remedies which Lender may have hereunder or under the Loan Documents or by law, at its option and without prior demand or notice, take any or all of the following actions:

(a)    Immediately terminate any further advance of Loan funds hereunder, and from time to time apply all or any part of the undisbursed Loan funds or any funds held in the Fund Control Account to payment of Interest under the Note and/or upon any other obligations of Borrower hereunder or under the other Loan Documents.

(b)    Declare the Note immediately due and payable.

(c)    Directly or through a court-appointed receiver, enter upon the Property and take whatever actions are deemed by lender as appropriate and make such changes therein as Lender may from time to time and in its judgment deem appropriate, all at the risk and expense of Borrower.  Lender shall have the right at any time to discontinue any work commenced by it or to change any course of action undertaken by it and not be bound by any limitations or requirements of time whether set forth herein or otherwise.  Lender shall have the right and power (but shall not be obligated) to assume any contract or subcontract made by or on behalf of Borrower in any way relating to the Property and to take over and use all or any part of the labor, materials, supplies and equipment

contracted for by or on behalf of Borrower whether or not previously incorporated into the Property, all in the discretion of Lender.

(d)     In connection with any work of construction undertaken by Lender pursuant to the provisions of Section 7.2(c) above, Lender may (i) engage builders, contractors, architects, engineers and others for the purpose of furnishing labor, materials and equipment in connection with the subdivision of the Property; (ii) pay, settle or compromise all bills or claims which may become liens against the Property or which have been or may be incurred in any manner in connection with the subdivision of the Property or for the discharge of liens, encumbrances or defects in title of the Property; (iii) take such other action, including the employment of watchmen to protect the Property, or refrain from taking action under this Agreement as Lender may in its discretion determine from time to time. Borrower shall be liable to Lender for all sums paid or incurred for completing the subdivision of the Property, whether the same shall be paid or incurred pursuant to the provisions of Section 7.2(c) above or otherwise, and all payments made or liabilities incurred by Lender hereunder of any kind whatsoever shall be paid by Borrower to Lender upon demand, with interest at the rate set forth in the Note at the default rate, and all of the foregoing shall be deemed and shall constitute advances under this Agreement and be secured by the Loan Documents. For the purpose of carrying out the provisions and exercising the rights, powers and privileges granted by Section 7.2(c) above, Borrower hereby unconditionally and irrevocably constitutes and appoints Lender its true and lawful attorney-in-fact to enter into such contracts, perform such acts and incur such liabilities as are referred to in Section 7.2(c) above in the name and on behalf of Borrower. This power of attorney is coupled with an interest.

(e)     (INTENTIONALLY OMITTED).

(f)     Foreclose judicially or non-judicially on any security for the Loan without waiving its rights to proceed against other security or other entities or individuals directly or indirectly responsible for repayment of the Loan, or waive any and all security for the Loan as Lender may in its discretion so determine, and pursue any such other remedy or remedies as Lender may so determine to be in its best interest, including, without limitation, appointment of a receiver pursuant to the provisions of the Deed of Trust. All remedies of Lender provided for herein and in any other Loan Document are cumulative and shall be in addition to all other rights and remedies provided by law. The exercise of any right or remedy by Lender hereunder shall not in any way constitute a cure or waiver of default hereunder or under any other Loan Document or invalidate any act done pursuant to any notice of default, or prejudice Lender in the exercise of any of its rights hereunder or under any other Loan Documents unless, in the exercise of said rights, Lender realizes all amounts owed to it under such Loan Documents.

## ARTICLE 8
## MISCELLANEOUS

8.1     No Waiver. No waiver of any default or breach by Borrower hereunder shall be implied from any failure by Lender to take action on account of such default if such default persists or is repeated, or from Lender's funding of one or more advances of funds during a period of time when Borrower is in default or breach of its obligations hereunder, and no express

waiver shall affect any default other than the default specified in the waiver and shall be operative only for the time and to the extent therein stated. Waivers of any covenant, term or condition contained herein shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. The consent or approval by Lender to, or of, any act by Borrower requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to, or of, any subsequent similar act.

8.2    <u>Successors and Assigns.</u>  This Agreement is made and entered into for the sole protection and benefit of Lender and Borrower, their successors and assigns, and no other person or persons shall have any right of action hereunder. The terms hereof shall inure to the benefit of the successors and assigns of the parties hereto; provided, however, that the Borrower's interest hereunder cannot be assigned or otherwise transferred without the prior consent of Lender, which consent may be given or withheld in Lender's sole and absolute discretion.

8.3    <u>Notices.</u>  All notices, demands, requests, approvals, consents, orders and the like given by one party to the other hereunder shall be in writing and sent by personal delivery, nationally recognized overnight delivery service, certified or registered mail, return receipt requested, or by facsimile transmission with a "hard" copy delivered by one of the other delivery methods within the next two (2) business days addressed as follows:

If to Lender, to:

SouthWest Finance LLC
Attention: Frank Balistrieri
2651 East Chapman Ave Suite 216
Fullerton, CA 92831

If to Borrower:

R44 Lending Group
621 W Rosecrans Ave, Ste 102
Gardena, CA 90248

,

Notices, demands and other written communications shall be deemed given upon personal delivery or upon deposit with the Post Office or other carrier addressed at the address set forth above. Notice of a change of address or the person to whom notices, demands and other written communications are to be sent shall be given in the manner set forth in this Section 8.3.

8.4    <u>Authority to File Notices.</u>  Borrower irrevocably appoints, designates and authorizes Lender as its agent (said agency being coupled with an interest) to file for record any Notices of Completion, Cessation of Labor, or file or send to any third party any other notice or documents or take any other action that Lender deems necessary or desirable to protect its interest hereunder or under the other Loan Documents, and will, upon request by Lender, execute such additional documents as Lender may require to further evidence the grant of the aforesaid right to Lender.

8.5    <u>Time.</u>  Time is of the essence hereof.

8.6    <u>Signs.</u>  Borrower agrees that Lender may place a suitable sign of its choosing on the Property, evidencing that financing is being provided by Lender.

8.7    <u>Amendments, etc.</u>  No amendment, modification, termination or waiver of any provision of this Agreement or of any of the other Loan Documents, nor consent to any departure by Borrower therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8.8    <u>Headings.</u>  The Article and Section headings set forth herein are for reference only and in no way define, limit, extend or interpret the scope of this Agreement or of any particular Article or section.

8.9    <u>Number and Gender.</u>  When the context in which the words are used in this Agreement indicate that such is the intent, words in the singular number shall include the plural and vice-versa. References to any one gender shall also include the other gender if applicable under the circumstances.

8.10    <u>Validity.</u>  In the event that any provision of this Agreement shall be held to be invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this Agreement.

8.11    <u>Governing Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict of laws principles.

8.12    <u>Survival of Warranties.</u>  All agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement, the other Loan Documents, the Environmental Indemnity and the making of the Loan hereunder and continue in full force and effect until the obligations of Borrower hereunder and the indebtedness evidenced by the Note have been fully paid and satisfied.

8.13    <u>Attorneys' Fees.</u>  If any legal action or proceeding is brought by either Borrower or Lender to enforce or construe a provision of this Agreement, the other Loan Documents, or the Environmental Indemnity, the unsuccessful party in such action or proceeding shall pay all of the attorneys' and professionals' fees and costs incurred by the prevailing party.

8.14    <u>Incorporation of Exhibits.</u>  All Exhibits referenced herein and attached hereto are incorporated into this Agreement by reference as if fully set forth herein.

8.15    <u>Right to Assign or Participate Loan.</u>  Lender shall retain the right at all times, with or without Borrower's consent, to assign and/or grant participations in all of the Loan or any portion thereof, to any other financial institution or investor acceptable to Lender, and Borrower acknowledges that Lender shall have the right to share any and all information concerning Borrower and the Project with any such prospective Loan participant or assignee.

8.16    <u>Venue and Forum.</u>  In the event that any legal action should be filed by either party against the other, the venue and forum for such action shall be the Superior Court of the State of California for the County of San Diego. Each of the persons and entities who are

shareholders, partners, managers or members of Borrower also agree to said venue and forum and further agree that, if they are not residents of California at the time of such actions, service of process may be made upon them by delivery via United States registered or certified mail.

8.17   _Legal Relationship._   The relationship between Borrower and Lender is that of borrower and lender, and no partnership, joint venture, or other similar relationship shall be inferred from this Agreement. Borrower shall have no right or authority to make representations, act, or incur debts or liabilities on behalf of Lender.  Borrower is not executing this Agreement as an agent or nominee for an undisclosed principal, and no third-party beneficiaries are or shall be created by the execution of this Agreement.

8.18   Counterparts.   This Agreement may be executed in one or more counterparts, each of which shall be an original and all of which shall constitute one and the same instrument.

8.19   _Entire Agreement; Conflicts._   This Agreement, the other Loan Documents and the Environmental Indemnity contain the entire agreement between the parties relating to the subject matter hereof and any and all prior written agreements and any and all prior and contemporaneous oral agreements relative hereto and thereto which are not contained herein or therein are terminated.  In the event of any inconsistency between the provisions hereof and the provisions of the other Loan Documents or the Environmental Indemnity, the provisions of the Loan Agreement shall be controlling.

8.20   _Usury._   Borrower hereby acknowledges and agrees that the Loan was arranged by Scripps Investment and Loans, Inc., a licensed real estate broker (License No 01345977) in the State of California, and is secured directly in whole by liens on real property, and, as such, pursuant to California Civil Code, Division 3, Part 4, Section 1916.1 et seq., restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to the Loan or the Loan Documents.

8.21   _Facsimile Signature Pages._   This Agreement or any of the Loan Documents (other than the Deed of Trust or any UCC-1 Financing Statement) may be executed by a party's signature transmitted by facsimile ("fax"), and copies of this Agreement or any of the Loan Documents executed and delivered by means of faxed signatures shall have the same force and effect as copies hereof executed and delivered with original signatures. All parties hereto may rely upon faxed signatures as if such signatures were originals.  Any party executing and delivering this Agreement or any of the Loan Documents by fax shall promptly thereafter deliver a counterpart signature page of this Agreement containing said party's original signature. All parties hereto agree that a faxed signature page may be introduced into evidence in any proceeding arising out of or related to this Agreement as if it were an original signature page.

8.22   _Jurisdiction; Court Proceedings._   BORROWER, TO THE FULL EXTENT PREMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (I) SUBMITS TO PERSONAL, NONEXCLUSIVE JURISDICTION IN CALIFORNIA WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM, RELATING TO OR IN CONNECTION WITH SUCH INSTRUMENT OR THE LOAN, (II) AGREES THAT ANY SUCH SUIT, ACTION OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN SAN

DIEGO COUNTY, CALIFORNIA, AND (III) SUBMITS TO THE JURISDICTION OF SUCH COURTS. BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, FURTHER AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN SAN DIEGO COUNTY, CALIFORNIA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER, BENEFICIARY OR TRUSTEE TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM), AND IRREVOCABLY AGREES NOT TO ASSERT ANY OBJECTION WHICH IT MAY EVER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING AN ANY FEDERAL OR STATE COURT LOCATED IN CALIFORNIA AND ANY CLAIM THAT ANY SUCH ACTION, SUIT OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN ANY INCONVENIENT FORUM.

8.23  1.5 Waiver of Jury Trial. EACH BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES HEREBY THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING, INCLUDING, WITHOUT LIMITATION ANY TORT ACTION, BROUGHT BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO CONDUCT, ACT, OMISSION, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, SUCH PERSON'S DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH SUCH PERSON), IN CONNECTION WITH THE LOAN OR THIS INSTRUMENT, INCLUDING, WITHOUT LIMITATION, IN ANY COUNTERCLAIM WHICH BORROWER MAY BE PERMITTED TO ASSERT THEREUNDER, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THIS WAIVER OF THE RIGHT TO A JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE LENDER TO MAKE THE LOAN.


IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first written above by and through their duly authorized representatives.


**BORROWER:**                          **LENDER:**

R44 Lending Group LLC                  Southwest Finance
a Delaware LLC                         a California LLC


By _____            By _____

Leo Starflinger Manager                Franc Balisterier Manager

## BENEFICIAL INTEREST ADDENDUM

(Attached to Note and Trust Deed dated October 20, 2015)

R44 Lending Group LLC – 2,170,389 1st Trust Deed/ Note
Property Located at 218 W Carson St, City of Carson

Konrad Trongle married sole and separate as to an individual 150,000/2,170,389 beneficial
interest;

Laura Afonina single woman, as to an undivided 75,000/2,170,389 beneficial interest;

Edwina Thoma married woman undivided 250,000/2,170,389 beneficial interest;

Arthur Walcher , as to an undivided 150,000/2,170,389 beneficial interest;

Benno Starflinger, as to undivided 80,000/2,170,389 beneficial interest;

Erich Paul, as to an undivided 150,000/2,170,389 beneficial interest;

Angela Fischer, as to an undivided 150,000/2,170,389 beneficial interest;

Freya Hammer, as to an undivided 350,000/2,170,389 beneficial interest;

Norbert Glockner , a single man, as to an undivided 150,000/2,170,389 beneficial interest;

Bruce Offler, as to an undivided 50,000/2,0000,000 beneficial interest;

Lilongo Tafea single man, as to undivided 250,000/2,170,389 beneficial interest;

Anita Meier, as to undivided 75,000/2,170,389 beneficial interest;

Anton Kirnbenger, as to an undivided 250,000/2,170,389 beneficial interest;

Aggregated Amount of Investors $2,125,000.00

# EXHIBIT "B"

## Business Plan

(Intentionally Omitted)

## EXHIBIT "A"

### Legal Description

Title Company to attach proper legal description prior to recordation of subject Trust Deed.

EXHIBIT 2

# Village View Escrow, Inc.

129 Palos Verdes Blvd. Suite #101 • Redondo Beach, CA 90277
(310) 944-9626 • FAX (310) 944-9615

DATE: June 13, 2016                                          TIME: 16:56:47
ESCROW NO: 7397-MM
ESCROW OFFICER: Michelle Marsico          CLOSING DATE: December 7, 2015

### BORROWER FINAL CLOSING STATEMENT

LENDER(S): Southwest Finance, LLC
BORROWER(S): R44 Lending Group
PROPERTY: 218 West Carson Street, Carson, CA 90745

| | $ DEBITS | $ CREDITS |
|---|---|---|
| **FINANCIAL:** | | |
| New 1st Trust Deed to Southwest Finance, LLC | | 2,170,389.00 |
| **TITLE CHARGES:** | | |
| ALTA Loan Policy for 2,170,389.00 | 2,726.00 | |
| Sub Escrow Fee | 45.00 | |
| Recording Trust Deed(s) | 60.00 | |
| Reconveyance(s) | 78.00 | |
| Subordination Agreement | 27.00 | |
| Fedex Fee to Provident Title | 25.00 | |
| Messenger Fee | 24.00 | |
| **ESCROW CHARGES** | | |
| Escrow Fee | 2,000.00 | |
| **NEW LOAN CHARGES - SOUTHWEST FINANCE, LLC** | | |
| Total Loan Charges: $1,718,195.15 | | |
| 3 months prepaid interest @ 8.00% | 42,576.00 | |
| Principal balance of prior note    including accrued interest | | |
| Payoff of existing loan | 1,678,513.00 | |
| Interest @ 8.0000% from 12/07/15 to 12/01/15 | | 2,893.85 |
| **PAYOFFS -** | | |
| **Total Payoff $0.00** | | |
| Principal Balance | 1,678,513.00 | |
| | | 1,678,513.00 |
| **PAYOFFS -** | | |
| **Total Payoff $350,300.00** | | |
| Principal Balance | 350,300.00 | |
| **DUE BORROWER** | $    96,908.85 | |
| **TOTALS** | $ 3,851,795.85 | $ 3,851,795.85 |

SAVE THIS STATEMENT FOR INCOME TAX PURPOSES

PROMISSORY NOTE SECURED BY
DEED OF TRUST and ASSIGNMENT OF RENT

$2,170,389.00

Torrance, California
Date: October 20, 2015

FOR VALUE RECEIVED, the undersigned, R44 Lending Group LLC ("Borrower"), hereby promises to pay to the order of Southwest Finance("Lender"), at such other place Lender from time to time designates in writing, the principal sum of TWO MILLION ONE HUNDRED SEVENTY THOUSAND THREE HUNDRED EIGHTY NINE DOLLARS  ($2,170,389.00), or such lesser or greater sum as is advanced to Borrower by Lender under the terms of that certain Loan Agreement dated of even date herewith, executed by Borrower and Lender relating to this debt (the "Loan Agreement"), together with all interest thereon calculated daily on the outstanding principal balance, and such other sums referred to herein, until paid in full in accordance with the terms, conditions and provisions set forth herein (the "Note").   This Note is secured by, among other things, that certain Deed of Trust, Assignment Of Rents of even date herewith (the "Deed of Trust").

   1.    Interest. The advanced, unpaid principal hereof shall bear interest ("Interest") from the date of advance or addition at a rate equal EIGHT percent (8%) per annum, compounded monthly (the "Note Rate"), beginning December 1, 2015.

   2.    Payment Schedule: Maturity Date. This Note shall be payable in monthly installments of Interest only, in arrears commencing with the first day of the first month following the date of the first advance under this Note and continuing on the same day of each and every month thereafter until NOVEMBER 30, 2016, (the "Maturity Date"), at which time the entire outstanding principal balance of this Note, together with accrued and unpaid interest thereon and any other sums due hereunder, shall be due and payable in full. Interest and/or any other sums due which are not paid when due hereunder or under the Loan Agreement shall be compounded monthly and shall bear interest at the Default Rate described below.

      a.    Prorated Interest. Borrower to pay Prorated Interest from close of escrow to DECEMBER 1, 2015.

      b.    Prepaid Interest. 3 MONTHLY PAYMENTS HAVE BEEN PREPAID BY BORROWER AND ADDED TO NOTE AMOUNT. NEXT PAYMENT DUE APRIL 1, 20016, AND FINAL PAYMENT DUE NOVEMBER 30,2016, unless an Option to Extend has been exercised.

      c.    Extensions of Maturity Date (Options to Extend). Borrower may on two (2) occasions request that Lender extend the Maturity Date for an additional period of three (3) months each, and such extension request shall be granted to Borrower when all conditions as set out hereunder and in the Loan Agreement have been satisfied.

3.   Application of Payments All Interest on this Note shall accrue from the date of advance or disbursement and be calculated on the basis of a three hundred sixty (360) day year. Each payment to Lender hereunder shall be first applied to the payment of fees, costs and expenses for which Borrower is liable hereunder and under the Loan Agreement, next to the payment of accrued Interest, and last to the reduction of principal. This Note shall continue to bear interest at the Note Rate (or at the Default Rate, as hereinafter defined, if and so long as any Event of Default, as hereinafter defined, exists hereunder) until and including the date of collection of all sums due.

4.   Prepayment. This Note may be prepaid in whole or in part at any time.

5.   Late Charge. In the event any amount due under this Note is not paid when due and shall remain unpaid at the end of the tenth (10th) day after the date on which it is to be paid, Borrower shall pay to the Lender a late charge equal to ten percent (10%) of the amount so delinquent. The parties hereto acknowledge and agree said charge is a reasonable approximation of Lender's actual losses and expenses incurred, and loss of use of funds for such late payment, all of which is impractical and extremely difficult to estimate and ascertain. Said charge shall be assessed for each such monthly installment or amount in default, shall be due and payable with such payment without demand being required therefore and shall be fully secured by the Deed of Trust (as defined below) and the other Loan Documents (as defined below). The imposition or collection of said charge from time to time shall not be in lieu of any other remedy of the Lender, and the failure to collect the same shall not constitute a waiver of the Lender's right to require such payment for past or future defaults.

6.   Collateral. This Note is subject to and is issued pursuant to This Note is secured by a Deed of Trust, Security Agreement, ("Deed of Trust") of even date herewith encumbering certain real property located in the City of Los Angeles, County of Los Angeles, more particularly described therein (hereinafter referred to as the "Real Property"), and certain other loan documents, all as more fully described and defined in the Loan Agreement (collectively the "Loan Documents"), to which reference is hereby made for a description of the nature and extent of the security, the rights of Lender in respect thereof and the terms and conditions upon which this Note is issued.

7.   Costs of Collection. Borrower promises to pay all costs, expenses and attorneys' fees (including in house counsel billing at normal billing rates) incurred by the holder hereof in the exercise of any remedy (with or without litigation), in any proceeding for the collection of the debt, in any trustee's sale or foreclosure of the Deed of Trust or the realization upon any other security securing this Note, in protecting or sustaining the lien or priority of said Deed of Trust or said other security, or in any litigation or controversy arising from or connected with this Note, the Loan Agreement or any of the other Loan Documents. Said proceedings shall include, without limitation, any probate, bankruptcy, receivership, injunction, arbitration, mediation or other proceeding, or any appeal from or petition for review of any of the foregoing. Borrower shall also pay all of Lender's costs and attorneys' fees (including in house counsel billing at normal billing rates of $325.00/hr.) incurred in connection with any demand, workout, settlement, compromise or other activity in which Lender engages to collect any portion of this debt not paid when due or as a result of any -other default of Borrower. If a judgment is obtained thereon which includes an

award of attorneys' fees, such attorneys' fees, costs and expenses shall be in such amount as the court shall deem reasonable, which judgment shall bear interest at the Default Rate from the date it is rendered to and including the date of payment to Lender.

8.  <u>Defaults: Acceleration</u>. Borrower agrees that it shall be an "Event of Default" hereunder, if:

a.  Borrower fails to pay: (i) any installment of interest within ten (10) days after the due date thereof; (ii) principal on or before the Maturity Date; (iii) within five (5) days following written and thereof, any taxes, assessments, insurance premiums or any lien or charge upon the Property; or (iv) within five (5) days following written demand thereof, any other charge or sum when due under the terms of this Note, the Deed of Trust or any of the Loan Documents; or

b.  Borrower does not timely and faithfully perform each and every term, condition and/or provision contained in this Note, the Deed of Trust, the Loan Agreement and/or the Loan Documents strictly in accordance therewith or otherwise commits a default thereunder and such failure of Borrower to perform or the default of Borrower continues beyond any applicable cure period provided; or

c.  Any breach by Borrower of the terms and conditions of any permitted financing senior or junior to Lender.

d.  Any Event of Default occurs under any of the Loan Documents.

e.  Any liens be placed against the property of any sort except Mortgage liens.

Upon the occurrence of an Event of Default, and subject to any right expressly granted in the Loan Documents to Borrower to cure any default to the extent applicable, the entire principal sum, with all accrued and unpaid interest thereon due under this Note, shall, at the option of Lender, become immediately due and payable, without notice or demand, and Lender shall be entitled to collect all such amounts and to enforce any and all remedies provided in the Loan Documents, the Deed of Trust or any other security for this Note, and/or any Loan Document.

9.  <u>Default Interest Rate</u>. If and so long as any Event of Default exists under this Note or any of the other Loan Documents, the interest rate on this Note, and on any judgment obtained for the collection of this Note, shall be increased from the date of default to a rate (the "Default Rate") equal to six percent (6%) per annum higher than the Note Rate. ANY ADVANCES MADE BY THE BENEFICIARY UNDER THE TERMS OF THE DEED OF TRUST SECURING THIS NOTE   SHALL ACCRUE INTEREST AT THE DEFAULT RATE.

10.  <u>Usury</u> INTENTIONALLY OMITTED.

11.  <u>Renewals</u>. Borrower, any guarantor of this Note and all others who may become liable for all or any part of this Note, consent to any number of renewals or extensions of the time of payment hereof, to the release of all or any part of the security for the payment hereof and to the release of any party liable for repayment of the obligations hereunder. Any such renewals,

extensions or releases may be made without notice to any of said parties and without affecting their liability.

12.    Multiple Parties. If Borrower is comprised of more than one person, each of such persons shall be jointly and severally liable for the indebtedness evidenced hereby. A default on the part Of anyone person comprising Borrower of this Note shall be deemed a default on the part of Borrower hereunder. Unless and to the extent otherwise limited by the express terms hereof, this Note is executed with recourse against the separate property and marital community property of all persons comprising Borrower who are executing this Note in their individual capacities (or as a general partner or as a guarantor or in some other capacity causing such person to be personally liable) and the marital community property of such persons' spouses.

13.    No Offset. All payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not : limited to, any decrease, reduction or deduction for, or on account of, any offset, withholdings, future taxes, future reserves, impost or duties of any kind or nature that are imposed or levied by or on behalf of any governmental agency. If at any future time, Lender shall be compelled by any law or any other requirement which on its face or by its application requires and/or' establishes reserves or payment, deduction or withholding of taxes, impounds or duties to act such that it causes or results in a decrease, reduction and/or deduction in payment received by Lender, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, payment, required withholding and/or deduction, shall not be reduced in any manner whatsoever.

14.    Waivers. Borrower hereby waives grace, diligence, presentment, demand of payment, notice of demand, notice of dishonor, protest, notice of protest, notice of nonpayment, and any and all exemption rights against the indebtedness evidenced by this Note, and the right to plead any statute of limitations as a defense to the repayment of all or a portion of this Note, and interest thereon, and any and all other notices and demands whatsoever, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No covenant, condition, right or remedy in this Note may be waived or modified orally, by course of conduct or previous acceptance or otherwise unless such waiver or modification is specifically agreed to in writing executed by Lender. Without limiting the foregoing, no previous waiver and no failure or delay by Lender in acting with respect to terms of this-Note or any of the Loan Documents shall constitute a waiver of any breach, default or failure of a condition under this Note any of the Loan Documents or any obligations contained therein or secured thereby. The undersigned further waives exhaustion of legal remedies and the right to plead any and all statutes of limitation as a defense to any demand on this Note, or to any agreement to pay the same, or to any demands secured by the Deed of Trust, or any other security for this Note.

15.    Governing Law and Interpretation. This Note shall be governed by and construed in accordance with the laws of the State of California except to the extend that federal law pre-empts the law of the State of California. All sums referred to herein hall be calculated by

reference to and payable in the lawful currency of the United States of America. This Note and all other Loan documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and any guarantors at arms' length with the benefit of party, regardless of who drafted such documents. The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend or modify the scope or intent of this Note. Any reference to Lender in this Note shall include any successor to or assignee of Lender. Time is of the essence of this Note and of each and every provision hereof.

16.  <u>Jurisdiction and Venue</u>. BORROWER, TO THE FULL EXTEND PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL (I) SUBMITS TO PERONAL JURISDICTION IN THE STATE OF CALIFORNIA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THE NOTE, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (II) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN LOS ANGELES COUNTY, CALIFORNIA, (III) SUBMITS TO THE JURISDICTION OF SUCH COURTS , AND (IV) TO THE FULLEST EXTEND PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN SAN DIEGO COUNTY, CALIFORNIA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM)

17.  <u>Service of Process</u>. BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED US MAIL, POSTAGE PREPAID, TO BORROWER AT THE ADDRESS FOR NOTICES PROVIDED IN THE LOAN AGREEMENT, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHAL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

18.  <u>Waiver of Jury Trial</u>. BORROWER; TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE LOAN DOCUMENTS OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OR THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

19.    _Partial Invalidity._ If any section or provision of this Note is declared invalid or unenforceable by any court of competent jurisdiction, said determination shall not affect the validity or enforceability of the remaining terms hereof No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

20.    _Notices._ Any notice, demand or request required hereunder shall be given in accordance with the provisions of the Loan Agreement

21.    _Full Power and Authority._ Borrower has the full power and ability to execute and deliver this Note, and this Note constitutes the valid and binding obligation of Borrower, enforceable in accordance with its terms.

22.    _Due On Sale and Further Encumbrance._ The Deed of Trust contains the following provision: Borrower (Trustor) acknowledges that ownership by Trustor of the Property encumbered by this Deed of Trust in fee simple estate was a material inducement to Lender (Beneficiary) in undertaking to make the loan secured by this Deed of Trust, and that Beneficiary, in making the loan secured by this Deed of Trust, is relying upon the creditworthiness, business reputation, knowledge and prior experience of Trustor. Accordingly, without the prior written " consent of Beneficiary first being had and obtained, which consent can be granted or denied in beneficiary's sole and absolute discretion. As used herein; "transfer" shall mean (a) any sale, agreement to sell, transfer or convey the Property or any portion thereof or interest therein, whether voluntarily or involuntarily, or by operation of law, or the lease of all or substantially all of the Property; (b) any transfer by way of security, including the placing or permitting the placing on the Property or any portion thereof, any mortgage, deed of trust, assignment of rents, or other security device; or (c) the issuance, sale, assignment, -pledge, hypothecation, mortgage, or transfer of more than 50% of the beneficial interests, capital, profits, losses, or assets, of Trustor, in any single or   ultiple transfers totaling more than _50%,_ either voluntarily or involuntarily, or by operation of law or otherwise. In the event of any such transfer, Beneficiary, may, at its option, and  without limiting any other right or remedy available to Beneficiary at law, in equity or by agreement with Trustor, accelerate the maturity of the loan secured by this Deed of Trust and require the payment of the then existing outstanding principal balance and all other sums due under said Joan and under this Deed of Trust. Notwithstanding the foregoing, partial releases of the Property may be permitted upon Borrower's full compliance with the release provisions of the Loan Agreement.

THIS NOTE IS PAYABLE IN FULL. AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ANY UNPAID INTEREST AND OTHER CHARGES WHEN DUE. LENDER IS UNDER NO OBLIGATION TO FINANCE THIS NOTE OR THE UNDERLYING LOAN AT THAT TIME. BORROWER WILL, THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAYBE THE SAME LENDER WHO MADE THIS NOTE, WILLING TO LEND YOU THE MONEY. IF YOU

REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS, INCLUDING LOAN ORIGINATION FEES, NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

This Note is secured by a Deed of Trust recording in first position on the following property:

218 W. Carson St., Carson CA (Mobile home Park Granada) Los Angeles County CA .

Revised Final Copy
Dated 10-21-2015

BORROWER:
R44 Lending Group LLC

By:        Leo Starflinger
           Manager